## HOLMES v. COLUMBIA PICTURES CORP.
### No. 14134–WB.

United States District Court
S. D. California, Central Division.
Jan. 8, 1953.

**328**

Harold Judson, Emil Steck, Jr., Los Angeles, Cal., for plaintiff.

Mitchell, Silberberg & Knupp, Los Angeles, Cal., for defendant.

BYRNE, District Judge.

The plaintiff has filed a complaint in two counts. In Count I he seeks to recover damages for breach of a contract to which he claims to be a third party beneficiary. In Count II he seeks recovery on an oral contract between the defendant and himself.

Defendant has filed a motion for summary judgment as to Count I *only*, which motion is the matter presently before the court.

The undisputed facts (as they relate to the matter presently before the court) may be summarized as follows: Plaintiff Holmes was the author of a screenplay which was originally entitled "Sure Thing" and ultimately entitled "Boots Malone" (hereinafter referred to as "Boots Malone"). On November 15, 1950, Holmes entered into a written sale-employment agreement with Sidney Buchman Enterprises, Inc. (hereinafter referred to as "Enterprises"), for the transfer from Holmes to Enterprises of certain rights to the story and screenplay, "Boots Malone", for a fixed compensation of $100,000 to Holmes and an additional contingent compensation of 15% (subsequently increased to 28¾%) of "total net profits", as defined in the agreement, from the distribution and exploitation of motion pictures based on the story and screenplay. Holmes agreed, in said agreement, to complete the screenplay and to render services as producer of a single motion picture to be based on the story and screenplay for no compensation.

On November 16, 1950 (one day following the Holmes-Enterprises agreement), the defendant, Columbia, and Enterprises entered into a written agreement for the production of a single motion picture by Enterprises, based on the screenplay, "Boots Malone", and for the distribution of the motion picture by Columbia. Columbia agreed to "use our best efforts consistent with good business policy in distributing and exploiting and causing the distribution and/or exploitation of the picture" in a manner generally comparable with the manner in which defendant distributes other motion pictures of the same general class and quality.

The plaintiff asserts that the picture was produced by Enterprises in compliance with the terms of the agreement between Enterprises and Columbia, but that Columbia has failed to use its best efforts to distribute the picture in a manner generally comparable with the manner in which Columbia distributes other pictures of the same class and quality; that defendant's failure to distribute the picture in the agreed manner has caused damage to plaintiff in that he has not received the anticipated compensation pursuant to the agreement between plaintiff and Enterprises providing for the payment to plaintiff of a percentage of the "total net profits" realized from the distribution of the picture.

The defendant contends that it is entitled to a judgment in its favor as a matter of law for the reason that the plaintiff is not one who can complain because he was not a party to the agreement of November 16, 1950, and is only incidentally benefited by the agreement. This is a diversity case, and the plaintiff relies on California Civil Code section 1559, which reads as follows:

"A contract, made expressly for the benefit of a third person, may be en-

forced by him at any time before the parties thereto rescind it."

The sole question presented is one of law involving the interpretation of the November 16, 1950, agreement between Enterprises and Columbia and the determination as to whether it is a contract made *expressly* for the benefit of Holmes.

The rule of the California decisions is summarized in 6 Cal.Jur., p. 473, section 280:

"The rule of the decisions is clear to the point that in order to sustain an action for the enforcement of a contract made for the benefit of a third person, there must have been an *intent clearly manifested* on the part of the contracting parties to make the obligation inure to the benefit of the third party. When two persons, for a consideration sufficient as between themselves, covenant to do some act which, if done, would incidentally result in the benefit of a mere stranger, that stranger has not a right to enforce the covenant, * * *. It has been expressly stated that section 1559 of the Civil Code is not intended to apply to instances where a third person is or may be merely incidentally or remotely benefited. As the code declares, the contract must be one 'made expressly for the benefit of a third person * *'. A right in the third party to enforce a contract which may be of incidental benefit to him has, it is said, never been admitted. * * * Under section 1559 of the Civil Code, it is not necessary that the parties for whose benefit the contract was made be named in the instrument. But it *must appear by direct terms that the contract was made for the benefit of some particular party*; and this will not be implied from the fact that, if the parties perform the contract strictly, it may operate incidentally to the benefit of the third person." (Emphasis added.)

Plaintiff claims the direct terms manifesting the intent to make the contract for his benefit can be found in Article XII, section 9, of the agreement, which provides in part:

"It is understood that Milton Holmes is to receive a portion of the proceeds of the picture in consideration of his transfer to the rights in the story and screenplay to you." ·

Plaintiff says the word, "understood", is synonymous with the words, "agreed" and "promised", and cites several cases to support that hypothesis. There can be no doubt that the word, "understood", is often used in contracts to convey a meaning synonymous with "agreed", but it is equally true that "understood" is often used as synonymous with "recognized" or "comprehended". The meaning to be ascribed to the word in a particular case depends upon the context from which it is taken. The words relied upon by plaintiff are found in Article XII of the agreement, which relates to "Distribution of Proceeds of the Picture" *between the parties to the agreement.* It provides, under a specified order of priority, for payment of taxes, bank loans, reimbursement of advances by the parties and recoupment of distribution charges; after the recoupment and reimbursement of the items set forth, Columbia shall retain 42½% and shall pay *all of the remaining gross receipts to Enterprises. There is no assumption of an obligation to pay anything to Holmes.*

The sole reason for mentioning Holmes in the "Distribution of Proceeds" clause was that the parties, in allocating the percentage of divisible proceeds *to be received by each party to the agreement,* recognized and took into consideration *Enterprises' obligation* to pay Holmes a portion of Enterprises' share. They specifically state that the difference (15%) between Columbia's share (42½%) and Enterprises' share (57½%) of the divisible proceeds "is to enable (Enterprises) to pay to Milton Holmes the percentage of the divisible proceeds" which Enterprises was obligated to pay Holmes under the terms of a separate agreement to which Columbia was not a party. They also provided that, in the event of a subsequent change in Enterprises' arrangement with Holmes resulting in a decrease in the amount Enterprises was obligated to pay Holmes, the percentage to be received by Columbia would be

increased proportionately. It is specifically provided: "Any part of the divisible proceeds payable to Milton Holmes shall be paid by you (Enterprises) from your share of the divisible proceeds payable to you under paragraph 8 of this Article XII, and we (Columbia) shall have no obligation to account to Milton Holmes."

Had Columbia. promised Enterprises in direct terms *that Columbia would pay Holmes* money due Holmes from Enterprises, Holmes would be a creditor beneficiary and could invoke California Civil Code Section 1559 to enforce the contract, but when, as here, the money is to be paid to Enterprises in order that it may be provided with money to pay Holmes, Holmes is at most an incidental beneficiary. See Restatement of Contracts, Section 133.

The cases cited by plaintiff are not in point. In each of them, the person against whom the contract was sought to be enforced had directly assumed an obligation to the third party. In the leading case of Hartman Ranch v. Associated Oil Co., 1937, 10 Cal.2d 232, 73 P.2d 1163, the defendant had, in very explicit terms, assumed the terms of the lease and agreed to be responsible to the lessor (the third party); in LeBallister v. Redwood Theatres, 1934, 1 Cal.App.2d 447, 36 P.2d 827, the defendant purchased a theatre and made a direct promise to the seller that he would hire the manager of the theatre, the plaintiff, for a period of one year; in Garratt v. Baker, 1936, 5 Cal.2d 745, 56 P.2d 225, defendant expressly agreed to pay life support to wife of partner when widowed.

Here, the defendant did not assume any obligation to the plaintiff; it did not agree to pay the plaintiff anything; it did not even require the other party to the contract to pay the plaintiff anything, but on the contrary, provided that, if Enterprises could relieve itself of its obligation to pay plaintiff as provided in the separate agreement between plaintiff and Enterprises, such an arrangement would be entirely satisfactory to defendant, whose percentage of divisible proceeds would be increased proportionately.

 The plaintiff, not being a party to the contract in question and not being a

third party beneficiary within the purview of Civil Code section 1559, may not recover under the first count of his complaint.

A trial being necessary on Count II of the complaint, the court's ruling on this matter is of the pretrial type as authorized under the Federal Rules of Civil Procedure. To avoid setting in motion the running of the time within which plaintiff may seek a review, the court is not ordering the entry of a final judgment until judgment is rendered upon the whole case. See Rules 54(b) and 56(d); F.R.C.P., 28 U.S.C.A.