[Civ. No. 17042. Second Dist., Div. One. Dec. 31, 1949.]

FIRST THRIFT OF LOS ANGELES, Appellant, v. PA-
CIFIC INDEMNITY COMPANY, Respondent.

Hoag & Mack and A. F. Mack, Jr., for Appellant.

Fulcher & Wynn for Respondent.

WHITE, P. J.—This is an appeal by plaintiff from a judg-
ment of dismissal in favor of defendant, which judgment
was entered after the former declined to amend its second
amended complaint following the sustaining of a demurrer
thereto with leave to amend.

This action was instituted to recover money under bankers'
blanket bonds issued by defendant to plaintiff.

Two bonds are involved on this appeal. They will be re-
ferred to herein as "first bond," which was effective from

July 12, 1945, to January 3, 1947, and "second bond," which was effective on and after January 3, 1947.

By its second amended complaint plaintiff alleged that it is a California corporation, duly licensed to do a finance and personal loan business, which business at all times pertinent hereto included discounting of various types of commercial paper and contracts. The defendant is a California corporation duly licensed to do a multiple line insurance business, and which business included the writing of various surety bonds.

On July 12, 1945, defendant issued to plaintiff the first bond, which was at all times in full force and effect from said date to January 3, 1947. On the last mentioned date defendant issued to plaintiff the second bond.

The first bond indemnified against loss: "through transferring or paying money or funds or transferring or delivering any securities or establishing any credit or giving any value on the faith of *forged or altered written instructions or advices from any customer or from any banking institution.*" (Emphasis added.)

The second bond covered any loss: "through transferring, paying, . . . etc. . . . on the faith of any written instructions or advices, directed to the Insured, authorizing or acknowledging the transfer, payment, delivery or receipt of funds or Property, which instructions or advices purport to have been signed or endorsed by any customer of the Insured or by any banking institution but which instructions or advices *either bear the forged signature or endorsement or have been altered without the knowledge and consent of such customer or banking institution.*" (Emphasis added.)

The second amended complaint further alleged that during the period May, 1946, to March, 1947, one Sidney Weiss, a retail furniture dealer discounted purchasing contracts with plaintiff of the face value of $42,222.79. Payments were made under the contracts to May 14, 1947, leaving a total balance due plaintiff of $24,833.09. That all contracts were forgeries was discovered May 14, 1947, as well as the fact that all payments up to that date had been made by Weiss himself. Plaintiff's second amended complaint alleged that its total loss was $24,-833.09, the amount unpaid on the forged contracts, and that its loss up to January 3, 1947, under the first bond, was $15,-803.50. By its second amended complaint plaintiff made claim under both bonds. The limit of defendant's liability under each of the aforesaid bonds was $10,000.

It is the respondent's contention that appellant sustained no loss while the first bond was in force because there was no default in payments upon the forged contracts while said bond was in force, up to January 3, 1947. That no recovery can be had under the second bond because it expressly excludes loss due to forgery with knowledge of the "customer," in this case, Weiss, the forger.

We are in accord with respondent's contention that with reference to the second bond appellant has failed to state a cause of action. In its second amended complaint, appellant has alleged that the documents in question were actually prepared by the customer himself. Manifestly, they cannot be said to "bear the forged signature or endorsement or to have been altered *without the knowledge* or consent of such customer" (emphasis added), within the foregoing quoted language contained in and the limited type of forgery covered by said second bond.

Respondent's contention that as to the first bond there can be no recovery because no default occurred in payments to be made under the forged instruments during the term said first bond was in force cannot be sustained. While the precise question here presented appears to be one of first instance in California, we are persuaded that the time when appellant's loss occurred was when the money was paid out. While the payments made under the forged documents by Weiss for the purpose of concealing the forgeries from his victim as long as possible reduced the total loss, they do not change the situation that appellant sustained its loss for the reason that its money had been exchanged for something that was worthless because of the forgeries. The loss therefore occurred at the time such exchange was made. And the fact that certain installment payments were made and the forgeries were therefore not discovered until sometime after payment of the money by appellant upon the forged documents does not change the situation insofar as the value of the "contracts" is concerned. They would be worth no more 10 years after they were exchanged for appellant's money than they were at the time they were given to appellant. It would therefore seem manifest that appellant's actual loss occurred when its money was paid out. Let us assume that in the instant case Weiss had discounted with appellant one of the forged "contracts" on July 12, 1945 (when the first bond became effective) ; that such forged "contract" provided that the first payment thereunder was due

January 5, 1947 (the first bond having expired January 3, 1947, two days earlier) ; that Weiss had immediately absconded with the proceeds of his forgery ; that appellant had discovered the forgery on August 1, 1945, and immediately sought reimbursement from respondent under the provisions of the first bond. Could it seriously be contended that respondent had no liability under its bond upon the theory that appellant would sustain no loss until the first installment was due January 5, 1947, two days subsequent to the expiration of the term within which the bond was in force? The answer is obvious.

We find support in other jurisdictions for the conclusion reached by us, including the cases of *Eliot Sav. Bank* v. *Aetna Casualty & Surety Co.*, 310 Mass. 355 [38 N.E.2d 59, 63] ; *Provident Trust Co.* v. *National Surety Corp.*, 138 F.2d 252, 254.

It must therefore be held that while appellant's second amended complaint failed to state a cause of action as to the second bond, it did state a cause of action as to the first bond.

The judgment is reversed and the cause remanded for further proceedings in accordance with the views herein expressed.

Doran, J., and Drapeau, J., concurred.