[Civ. No. 7722.   Third Dist.   Apr. 6, 1950.]

L. H. THODE et al., Appellants, v. L. C. McAMIS et al., Respondents.

Hubert I. Townshend for Appellants.

Earl B. Jester, in pro. per., King & Savage and J. F. Good for Respondents.

VAN DYKE, J.—The appellants herein are copartners doing business under the firm name of Thode & Sons Lumber Company. As plaintiffs in the trial court they brought an

action to recover from defendants Jester, Stockwell and Henderson, copartners doing business as The Woodcraft Shop, the value of certain materials sold by them to said defendants and by said defendants used in the construction of a dwelling house for defendants L. C. McAmis and Virginia McAmis, husband and wife. Against the property of the defendants McAmis they sought foreclosure of a materialman's lien. They also sought to recover from defendant Standard Accident Insurance Company, a corporation, the value of the same materials, basing their claim for this relief upon a bond given by that company to the owners. They recovered judgment against defendant Jester as prayed for. They were denied judgment against the owners because they had failed to perfect their claim of lien against the owners' property. They were denied relief against the insurance company, and it is from this last part of the judgment, that which denied them any relief against the insurance company, that they appeal.

Doctor McAmis and his wife, under date of May 27, 1946, entered into a contract with Jester and his associates, wherein they were referred to respectively as owner and contractor, under which designations they will be hereinafter referred to. By the agreement the contractor agreed to build a dwelling house upon a lot owned by the owner in accordance with plans and specifications referred to in the instrument. The owner agreed to pay the stipulated price in five equal installments. Specifically, the contractor agreed to provide all the materials and to perform all the work shown on the drawings and described in the specifications, entitled " 'Proposed Dwelling for Dr. and Mrs. L. C. McAmis' . . . and to do everything required by the general conditions of the contract, specifications and the drawings." Work was begun June 1, 1946. On June 3d following, the Standard Accident Insurance Company, hereinafter referred to as the Insurance Company, executed and delivered to the owner a bond, the material portions of which read as follows:

"That Earl Juster, Earl Hunderson and Harvey Stockwell doing business as The Woodcraft Shop (hereinafter called Principal) as Principal, and the Standard Accident Insurance Company, a corporation of the State of Michigan, . . . as Surety, are held and firmly bound unto Dr. L. C. McAmis (hereinafter called Owner) in the full and just sum of Eleven Thousand Nine Hundred Eighty seven and 85/100 Dollars ($11,987.85) to the payment of which, well and truly to be

made, the Principal and Surety bind themselves, . . ., firmly by these presents.

"Whereas, the Principal has entered into a certain written contract, . . ., with the Owner for Construction of a dwelling in Oroville, California,

"Now, Therefore, the condition of the above obligation is such, That, if the above bounden Principal shall indemnify the Owner from and against any and all loss or damage directly arising by reason of the failure of the Principal to perform faithfully said contract, as well as against any and all direct loss which the Owner may sustain by reason of any mechanic's lien or liens that may be finally established against said improvements and the ground upon which constructed, for work done and/or material furnished in and about the performance of said contract, then this obligation shall be void, otherwise of full force and effect."

Neither the contract nor the bond was recorded as might have been done under section 1183 et seq. of the Code of Civil Procedure, and it is apparent by reference to the date of the bond that since it was made after work commenced it could not have been filed for record before the work was commenced under the contract, as would be necessary in respect to the bond given under those sections if the same was to afford all of the protection which the recording of a contract and bond provided for in those sections would afford to the owner. As before stated, appellants never perfected their claim of lien against the property of the owner, but they sought by their complaint in the trial court to recover directly from the insurance company, claiming they had a right so to do in an action direct upon the bond.

We think the bond involved here permits of no such construction as will afford appellants any claim against the insurance company. The language of the bond is clear. It is strictly a contract of indemnity. The language used is apt and free from ambiguity. The insurance company does not undertake or guarantee that the contractor will perform the contract or that liens may not be established against improvements and the ground upon which they are to be constructed, but on the contrary undertakes to indemnify the owner against such loss or damage, if any, as the owner may suffer if the principal does fail or if such liens are finally established. Such a contract affords a remedy to the owner to the extent of such loss only, and only after a loss has been actually paid by the owner. (Civ. Code, § 2778.) This latter condition,

of course, expressed in the cited code section, is as much a part of the instrument as though set out therein. Contracts of suretyship are to be interpreted under the same rules to be observed in the case of other contracts. (Civ. Code, § 2837.) The parties to this contract are only the contractor, the owner and the insurance company, and every provision of the contract can be given full application without consideration of any other persons. It results therefore that appellants had no right of action upon this bond.

Appellants' contention that they do have such right of action is based upon a claim that they are members of a class, to wit, materialmen for whose express benefit this bond was given. To uphold this contention they cite and rely upon a number of cases among which are the following: *Sunset Lumber Co.* v. *Smith,* 91 Cal.App. 746 [267 P. 738], holding that if a surety guarantees that a contractor will perform all obligations of the contract, thus impliedly guaranteeing he will pay for all labor and materials, such undertaking constitutes a contract made expressly for the benefit of those who furnish such commodities; *Woodhead Lumber Co.* v. *E. G. Niemann Investments, Inc.,* 99 Cal.App. 456 [278 P. 913], holding that where a bond indemnified a mortgagee of a building to be constructed, against loss from failure of the owner to complete it and in addition undertook expressly that the owner would pay in full the claims of all persons performing labor upon or furnishing materials to be used in such work, the latter provision constituted a contract for the benefit of such persons and they might sue directly upon it; *W. R. Spalding Lumber Co.* v. *Fradkin,* 68 Cal.App.2d 308 [156 P.2d 450], holding that where in a letter a surety agreed with the owner that the bills incurred in the performance of a contract would be paid and there would not be any liens, the letter constituted a contract for the benefit of lien claimants upon which they might have direct action against the writer. But these and other cases cited are all inapplicable here. Generally speaking, they went upon the theory that the bond or undertaking in question contained provisions which could not be given full effect unless the contracts be construed as being expressly for the benefit of others than the named parties. Thus in *Woodhead Lumber Co.* v. *E. G. Niemann Investments, Inc., supra,* the court said at page 460:

"The provision in the bond in reference to loss by reason of failure to complete the building clearly inured to the benefit of the mortgage company—that concerning the payment of

materialmen did not. To give this latter clause effect (and it is to be remembered that 'the whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable . . .' [Civ. Code, sec. 1641]), it must be held that it inured primarily to the benefit of the materialmen. Therefore, since it is alleged that appellant was one of the materialmen, appellant is entitled to sue upon the bond. And, it being further alleged that by agreement it furnished services and materials used in the construction of the building and that the same have not been paid for, its cause of action is completely stated.'' (See, also, *French* v. *Farmer,* 178 Cal. 218 [172 P. 1102].)

In the case at bar we have no such provisions as are referred to in the cited cases and the provisions of this bond can be given full effect by keeping the contract completely among those who are expressly made parties thereto.

■ Appellant further argues that a right of action upon the bond is conferred by section 1183 of the Code of Civil Procedure. We do not agree. Said section furnishes the owner, subject to court approval, with a method whereby he may, if he desires to do so, limit the amount of mechanics' liens to the contract price by filing the contract and a bond which by its terms inures to the benefit of lien claimants prior to the commencement of construction. An owner is not required to seek such protection, the only penalty for not doing so being that liens may be perfected for the reasonable value of the work or material furnished without limitation to contract price.

■ Appellants further contend that there was here a clear intent on the part of the owner to provide, through this bond, protection for materialmen and laborers and the trial court permitted considerable testimony to be introduced concerning the facts and circumstances attending the execution of this bond. However, this bond, as we have said, is not ambiguous or uncertain; its provisions are clear and direct and such a contract constitutes an exclusive statement of the intent of the parties in making it. Such a document is within itself the contract of the parties and it cannot be changed in any respect by evidence *aliunde.*

We hold that this bond was not intended in any degree for the benefit of any person other than the owner.

For a comprehensive annotation upon the right of a person furnishing material or labor to maintain action on a contractor's bond to an owner or a public body or on an owner's

bond to a mortgagee, reference is made to 77 American Law Reports, pages 21 to 214, inclusive. The law is therein summarized in respect of the particular question here involved, at page 213, as follows:

"According to the prevailing rule, the right of laborers and materialmen to recover on a contractor's bond depends upon the terms of the instrument. . . . It depends upon whether the bond is actually for the benefit of such persons, or is for the protection of the nominal obligee and merely incidentally benefits the third parties. A condition for the payment of laborers and materialmen is clearly for the benefit of such persons, within the contemplation of this doctrine. . . .

"Where the bond is conditioned merely to indemnify and hold harmless the owner or public body, it seems, both by authority and reason, that it does not inure to the benefit of laborers and materialmen so as to enable them to recover thereon."

Appellants next contend that the decision of the court is contrary to the pleadings, the findings and the evidence. Their argument runs in this manner: The complaint contained allegations that the bond was made and issued as a performance bond under said construction contract of May 27, 1946, and the court by a general finding found this allegation to be true; a performance bond guarantees the performance of the contract; the contract obligates the contractor to pay materialmen; therefore the finding that this was a performance bond conflicts with the conclusions of law and judgment in denying appellants the relief they sought against the insurance company. But the invalidity of this argument is apparent when it is considered that the bond and the contract were both appended to the complaint as exhibits and it was alleged that the same were made a part of the pleading by reference thereto. Therefore the allegations above referred to concerning the nature of the bond were but conclusions of the pleader which were not supported by the language of the documents referred to. (*Shaw* v. *McCaslin*, 50 Cal.App.2d 467, 473 [123 P.2d 102].)

For the reasons hereinbefore given the judgment is affirmed.

Adams, P. J., and Peek, J., concurred.

A petition for a rehearing was denied May 4, 1950, and appellants' petition for a hearing by the Supreme Court was denied June 1, 1950.